UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kevin M. Ell,
    Claimant

                                   Case No. 16-cv-465-SM
    v.                            Opinion No. 2018 DNH 002

Nancy A. Berryhill, Acting Commissioner,
Social Security Administration,
    Defendant

### O R D E R

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Kevin Ell, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI. See 42 U.S.C. §§ 423, 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is granted, and the Acting Commissioner's motion is denied.

**Factual Background**

I.  <u>Procedural History</u>.

In October of 2013, claimant filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he was disabled and had been unable to work since January 8, 2011.  Claimant was 40 years old at the time of his alleged onset of disability and had acquired sufficient quarters of coverage to remain insured through March of 2011.  Those applications were denied and he requested a hearing before an Administrative Law Judge ("ALJ").

In July of 2015, claimant, his attorney, and an impartial vocational expert appeared before an ALJ, who considered claimant's applications de novo.  Three weeks later, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.  Claimant then requested review by the Appeals Council.  That request was denied.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.

Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 8). In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 10). Those motions are pending.

## II.  Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a joint statement of stipulated facts which, because it is part of the court's record (document no. 13), need not be recounted in this opinion. Those facts relevant to the disposition of this matter are discussed as appropriate.

## Standard of Review

## I.  "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3). See also Irlanda Ortiz v. Secretary of Health &

Human Services, 955 F.2d 765, 769 (1st Cir. 1991). Substantial

evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Consolidated

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Importantly, it

is something less than a preponderance of the evidence, so the

possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding

from being supported by substantial evidence. Consolo v.

Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also

Richardson v. Perales, 402 U.S. 389, 401 (1971).


II.  The Parties' Respective Burdens.

An individual seeking SSI and/or DIB benefits is disabled

under the Act if he or she is unable "to engage in any

substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The

Act places a heavy initial burden on the claimant to establish

the existence of a disabling impairment. See Bowen v. Yuckert,

482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health &

Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that

burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,

education, and work experience, engage in any other
kind of substantial gainful work which exists in the
national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See also 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's
motion to reverse and the Acting Commissioner's motion to affirm
her decision.


## Background - The ALJ's Findings

In concluding that claimant was not disabled within the
meaning of the Act, the ALJ properly employed the mandatory
five-step sequential evaluation process described in 20 C.F.R.
§§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540
U.S. 20, 24 (2003). Accordingly, he first determined that
claimant had not been engaged in substantial gainful employment
before July or after August, 2014. Admin. Rec. at 19. Next, he
concluded that claimant suffers from the following severe
impairments: "substance abuse (IV drugs, cocaine, marijuana,
LSD); mild degenerative joint disease of the left shoulder,
status-post left rotator cuff repair; depression; mood disorder;
posttraumatic stress disorder (PTSD); antisocial personality

6

disorder; attention-deficit hyperactivity disorder (ADHD);
social phobia; hepatitis C; and obesity." Id. But, the ALJ
concluded that claimant's impairments, whether considered alone
or in combination, did not meet or medically equal one of the
impairments listed in Part 404, Subpart P, Appendix 1. Admin.
Rec. at 19-21.

Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
"medium" work, subject to several limitations. Specifically,
the ALJ found that:

> based on all of the impairments, including the
> substance use disorder, the claimant has the residual
> functional capacity to perform medium work as defined
> in 20 CFR 404.1567(c) and 416.967(c) except: the
> claimant can lift 50 pounds occasionally with the
> right upper extremity, but only 20 pounds occasionally
> with the left upper extremity; the claimant can
> occasionally push or pull with the left upper
> extremity; the claimant can frequently reach, but only
> occasionally reach overhead, with the left upper
> extremity; the claimant is limited to simple,
> unskilled work, with no interaction with the public,
> occasional interaction with co-workers, and no tandem
> tasks; the claimant is able to tolerate only
> occasional supervision; the claimant would be off task
> up to 25% of the workday; the claimant will miss more
> than three days of work per month; and due to mental
> impairments, this individual cannot sustain sufficient
> concentration, persistence or pace to do even simple,
> routine tasks on a regular and continuing basis for
> eight hours per day, five days per week, for a 40-hour
> work week or equivalent work schedule.

Admin. Rec. at 21.  In light of those restrictions, the ALJ
concluded that claimant was not capable of performing any past
relevant work.  Id. at 21.

At the final step of the analysis, the ALJ considered
whether there were any jobs in the national economy that
claimant might perform, given his substantial non-exertional
limitations.  Relying upon the testimony of the vocational
expert, the ALJ concluded that, "based on all of the
[claimant's] impairments, including the substance use disorder,
there are no jobs that exist in significant numbers in the
national economy that the claimant can perform."  Id. at 24.
Importantly, however, the ALJ went on to conclude that if the
claimant stopped his substance abuse, his non-exertional
limitations would not preclude him from performing a substantial
number of jobs in the national economy.  Accordingly, he
determined that claimant is not disabled.  Id. at 26-29.
Specifically, the ALJ concluded that:

> The substance use disorder is a contributing factor
> material to the determination of disability because
> the claimant would not be disabled if he stopped the
> substance use (20 CFR 404.1520(g), 404.1535,
> 416.920(g) and 416.935).  Because the substance use
> disorder is a contributing factor material to the
> determination of disability, the claimant has not been
> disabled within the meaning of the Social Security Act

at any time from the alleged onset date through the
date of this decision.

<u>Id</u>. at 29.


## Discussion

Claimant challenges the ALJ's decision on several grounds,
asserting that he erred by: (1) incorrectly finding that
claimant's disability is due, in material part, to a substance
abuse disorder; (2) improperly performing a credibility
analysis; (3) failing to base his assessment of claimant's RFC
on substantial evidence; and (4) incorrectly concluding that
claimant fails to meet Listing 12.06 for anxiety related
disorders.  Because the court concludes that insufficient
evidence supports the ALJ's determination that claimant's
sporadic drug use is "a contributing factor material to the
determination of disability," it need only address that issue.


Disability benefits under the Act are not available if
alcohol or drug abuse is "a contributing factor material to the
Commissioner's determination that the individual is disabled."
42 U.S.C. § 423(d)(2)(C).  Consequently, the critical question
presented when a claimant has a history of alcohol or drug abuse
is "whether [the Commissioner] would still find [the claimant]

disabled if [he or she] stopped using drugs or alcohol." 20
C.F.R. § 404.1535(b)(1). See also 20 C.F.R. § 416.935(b)(1).
It is, then, probably appropriate to discuss claimant's history
of drug abuse.

Claimant says he first used cocaine around age 15. Admin.
Rec. at 537. By age 19, he had tried various hallucinogens,
including mushrooms, LSD, and mescaline. Id. When he was 20,
claimant began using cocaine a few times a week, with even
heavier use beginning at around age 25. Id. at 537, 766. So,
while the ALJ's decision describes claimant's drug use as
involving "IV drugs, cocaine, marijuana, [and] LSD," Id. at 19,
that seems to have occurred when claimant was much younger; it
appears that, since his early 20's, claimant has typically
abused just cocaine, which became his "drug of choice." Id. at
543, 827.

At some point around 2005-06, claimant decided he wanted to
get clean - a decision that was prompted, at least in part, by
his girlfriend's death from a heroin overdose. Id. at 537. He
attended a (court-ordered) 30-day treatment program at
Friendship House. Following his discharge he relapsed, but
remained motivated to break his habit. Over the years, he has

sought out various forms of both mental health treatment and drug addiction counseling.  As part of his efforts to remain sober, he has also obtained a prescription for Suboxone (and, when he felt it necessary to maintain his sobriety, he has obtained Suboxone illegally).

He has, however, had several relapses over the years.  Many seem to have been precipitated by a traumatic event (such as the death of a close friend), or increased depression and anxiety (at which point he has engaged in a form of "self-medication"). But, the record suggests that those relapses were relatively infrequent and most were short-lived, following which claimant resumed his efforts to stay clean.  See, e.g., Admin. Rec. at 827 (after a year of being clean, claimant relapsed after being arrested and bailed); 557 and 594-95 (in November of 2014, claimant relapsed - perhaps for as long as two weeks - following the death of his friend in a motor vehicle accident and exhaustion of his medication); 618 (in February of 2015, claimant relapsed following the suicide of his best friend, after which he resumed attendance at daily meetings and was working with his sponsor); 626 (relapse in April of 2015, following what he described as a difficult therapy session); 835 (single occasion of relapse in May of 2015).

There are, however, numerous notes in claimant's medical records memorializing occasions on which he had "not relapsed since his last visit."  See, e.g., Id. at 584; 589; 599; 601; 605; and 614.

In reaching the conclusion that if claimant stopped his drug use, he would be capable of performing jobs that exist in significant numbers in the national economy, the ALJ did not rely upon any expert medical opinion(s).  To be sure, the ALJ initially afforded "great weight" to the opinions of two examining experts (Sandra Vallery, Ph.D., and Philip Robbins, Ph.D.), whose overall opinions are consistent with the conclusion that claimant is disabled.

> As for the opinion evidence, I afford great weight to the opinion of examining physician Sandra Vallery, Ph.D.  On February 6, 2014, Dr. Vallery assessed that the claimant would be unable to interact appropriately with supervisors, remember lengthy, detailed instructions, and could not tolerate stressors common to the work environment.  When substance abuse is included, I find this assessment to be generally consistent with the medical evidence of record, including Dr. Vallery's own findings.  I therefore find that Dr. Vallery's opinion merits great weight. I also afford the opinion of examining physician Philip Robbins, Ph.D., great weight.  On May 1, 2015, Dr. Robbins opined that the claimant would be unlikely to maintain attendance on a regular basis.  (Exhibit B14F, p. 4)  I find this assessment, when substance abuse is included, to be generally consistent with the medical evidence of record, including Dr. Robbins's

own findings.  I therefore find that his opinion
merits great weight.

Admin. Rec. at 23.  Subsequently, however, the ALJ reported that

he afforded "little weight" to those experts' opinions regarding

claimant's ability to function when sober.

> I afford little weight to the opinions of Drs. Vallery
> and Robbins with regard to the claimant's functioning
> when sober.  The claimant provided Dr. Robbins with
> verifiably false information when he denied any
> history of substance abuse.  Therefore Dr. Robbins's
> opinion is based upon incorrect factual assumptions.
> Dr. Vallery's opinion is also suspect, as the record
> remains quite unclear as to whether the claimant was
> sober from substances during that time.  Toxicology
> screens from early 2014 are not available.  However,
> once they did become available in October 2014, the
> claimant is seen to have failed more than one test for
> cocaine.  Moreover, it must be noted that the claimant
> only began to receive toxicology screens because he
> admitted to abusing illegally obtained Suboxone.  For
> all the above reasons, I afford little weight to the
> opinions of examining physicians Drs. Vallery and
> Robbins except to the extent they are consistent with
> the above residual functional capacity finding.

Admin. Rec. at 28 (emphasis supplied).

Parenthetically, the court notes that claimant did not

"deny" his history of drug abuse to Dr. Robbins.  He simply did

not discuss it (seemingly because Dr. Robbins did not ask him

about it).  Admin. Rec. at 634-38.  There is a meaningful

difference.  See generally Claimant's Memorandum (document no.

8-1) at 9-10, 18 (discussing this issue in some detail); see also Admin. Rec. at 354, Claimant's Affidavit at para. 14. Indeed, historically, claimant seems to have been open about his drug use when speaking with treating sources. See, e.g., Admin. Rec. at 536, 540, 695. Moreover, Dr. Robbins had copies of claimant's treatment notes, which included references to his prescription for Suboxone (and certainly, at least by implication, claimant's cocaine use). The ALJ's reasons for discounting Dr. Vallery's opinions, and for maintaining the suspicion that claimant could have been under the influence when he met with Dr. Vallery are equally suspect. See generally Claimant's Memorandum at 16-17.

Because he rejected the opinions of claimant's examining sources about claimant's ability to function when sober, affording them "little weight," the ALJ was forced to rely upon his own lay opinion and record evidence he believed suggests that claimant experienced "increased functioning during periods of sobriety." Admin. Rec. at 27. But, the evidence cited by the ALJ is not sufficient to support that conclusion.

Claimant more than adequately addresses this point in his comprehensive and well-supported memoranda (document nos. 8-1

and 12).  But, by way of example, the court notes that the ALJ
pointed to the following as evidence that claimant has
"increased functioning during periods of sobriety," such that he
would not be disabled if he maintained his sobriety.  First, the
ALJ noted that, "In December 2007, while incarcerated and
therefore sober, the claimant described his mood as 'bored.'
The claimant described himself as 'always outgoing, had lots of
friends' in prison records dated August 11, 2008."  Admin. Rec.
at 27.  It's not entirely clear what that evidence suggests.
But, that very same page of claimant's prison notes states that
he has been "depressed all [his] life," and that he currently
suffers from increased intermittent sleep, is increasingly
anhedonic, has no appetite, has decreased energy, is
increasingly depressed and occasionally tearful, wakes up at
night with anxiety and tachycardia, and is anxious in crowds
(including the chow line), with tachycardia.  Id. at 766.  None
of that suggests that claimant has sufficiently increased
functioning when sober to render him non-disabled.

    The ALJ also noted that, "The claimant worked for
approximately two months during the summer of 2014 hanging
ceiling tiles at a time he alleges sobriety."  Id. at 27.  That
factual finding is based upon a note from a physician's

assistant that makes an oblique reference to such work. Id. at
518. But, in his affidavit, claimant denies that he ever
engaged in such work and explains how and why the physician's
assistant was mistaken. Id. at 354-55, Claimant's Affidavit at
para. 16. Also, claimant's documented physical ailments and
poor mental condition during that period make it unlikely that
he was able to work as a ceiling installer (and, therefore,
support his claim that he was not engaged in such work). See
Id. at 455, 460-61, 519, 695, 701-02.

As further evidence of claimant's increased functioning
during periods of sobriety, the ALJ pointed to claimant's
statement that he drove his girlfriend (with whom he lived) to
work each day for a period of time during the winter of 2014-
2015. Id. at 27. But, as claimant notes, one of his relapses
took place during that period and there is no evidence
suggesting it interfered with his ability to drive his
girlfriend to work. See Id. at 618-20. Again, the evidence
upon which the ALJ has relied does not support his thesis that,
during periods of sobriety, claimant is not disabled. That
evidence merely shows that claimant was able (or at least
willing) to drive both when sober and when potentially under the
influence.

Finally, the ALJ found that, "In June of 2015, following two months of sobriety from cocaine, the claimant's insight, judgment, memory, attention span and concentration were all 'fair' by mental status examination." Id. at 27 (citing notes from a June 3, 2015, appointment at Riverbend Community Health center). But, just a day earlier, claimant admitted to a recent relapse – he used cocaine because he was feeling particularly depressed and his sponsor was out of town and unavailable to help him. Thus, one cannot plausibly conclude from that evidence that claimant is only disabled when he is using cocaine. Plainly, his depression seems to wax and wane, and the link between that depression and his cocaine use is not clear.

The point of decision here is this: the ALJ's conclusion that "claimant's functioning significantly improves during periods of abstinence," Admin. Rec. at 27, is not supported by substantial evidence. Little, if anything, can be inferred from the material cited by the ALJ to determine how much better (if at all) claimant functions when he is not under the (infrequent) influence of cocaine.

Given the apparent dearth of evidence directly addressing claimant's residual functional capacity when he is sober (as

compared to his RFC when under the influence), this case does

not lend itself to resolution without expert medical opinion on

the subject.  As this court has observed:

> The court of appeals for this circuit has repeatedly
> held that since bare medical findings are
> unintelligible to a lay person in terms of residual
> functional capacity, the ALJ is not qualified to
> assess residual functional capacity based on a bare
> medical record.  Accordingly, when assessing a
> claimant's RFC, the general rule is that an expert is
> needed to assess the extent of functional loss.
>
> That general rule, however, is subject to an
> exception: the Commissioner is not precluded from
> rendering common-sense judgments about functional
> capacity based on medical findings, as long as the
> Commissioner does not overstep the bounds of a lay
> person's competence and render a medical judgment.
> Thus, an expert's RFC evaluation is required where the
> record is sufficiently ramified that understanding it
> requires more than a layperson's effort at a
> commonsense functional capacity assessment.

Jabre v. Astrue, No. 11-CV-332-JL, 2012 WL 1216260, at *8

(D.N.H. Apr. 5, 2012) (citations and internal punctuation

omitted), report and recommendation adopted sub nom. Jabre v. US

Soc. Sec. Admin., No. 11-CV-332-JL, 2012 WL 1205866 (D.N.H. Apr.

9, 2012).


Two medical experts - Dr. Robbins and Dr. Vallery - opined

that claimant likely cannot perform in a manner consistent with

gainful employment.  To the extent the ALJ found reason to be

suspicious of those opinions, he should have either followed-up
with those experts, or required claimant to submit to another
consultative examination, specifically aimed at assessing his
RFC when sober.  Under the circumstances presented in this case,
the ALJ was not permitted to simply discount the available
expert opinions and then, relying upon his lay opinion, reach a
conclusion opposite to that reached by those experts.


## Conclusion

The Social Security Ruling that addresses "Drug Abuse and
Alcoholism" ("DAA"), provides the following guidance when
considering whether periods of abstinence or sobriety reveal
that drug abuse is material to a finding of disability:

> In all cases in which we must consider periods of
> abstinence, the claimant should be abstinent long
> enough to allow the acute effects of drug or alcohol
> use to abate.  Especially in cases involving co-
> occurring mental disorders, the documentation of a
> period of abstinence should provide information about
> what, if any, medical findings and impairment-related
> limitations remained after the acute effects of drug
> and alcohol use abated.  Adjudicators may draw
> inferences from such information based on the length
> of the period(s), how recently the period(s) occurred,
> and whether the severity of the co-occurring
> impairment(s) increased after the period(s) of
> abstinence ended.  To find that DAA is material, we
> must have evidence in the case record demonstrating

<u>that any remaining limitations were not disabling
during the period</u>.

<u>Titles II & XVI: Evaluating Cases Involving Drug Addiction &
Alcoholism (DAA)</u>, SSR 13-2P, 2013 WL 621536 (Feb. 20, 2013)
(emphasis supplied; footnote omitted).  The evidence cited by
the ALJ in this case is not sufficient to demonstrate that
claimant's non-exertional limitations were not disabling during
his periods of abstinence.

For the foregoing reasons, as well as those set forth in
claimant's memoranda (documents no. 8-1 and 12), claimant's
motion to reverse the decision of the Commissioner (document no.
8) is granted to the extent he seeks a remand for further
proceedings.  The Commissioner's motion to affirm her decision
(document no. 10) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), the
decision of the ALJ dated August 11, 2015, is vacated and this
matter is hereby remanded for further proceedings consistent
with this order.  The Clerk of Court shall enter judgment in
accordance with this order and close the case.

**SO ORDERED.**

_____

Steven J. McAuliffe
United States District Judge

January 5, 2018

cc:  Elizabeth R. Jones, Esq.
     Robert J. Rabuck, Esq.